Respondent suspended for three months. Settle order on notice.

---

Susquehanna Steamship Company, Inc., Respondent, *v.* A. O. Andersen & Company, Inc., Appellant. (Action No. 4 — Appeal No. 1.)

Second Department, February 1, 1924.

Ships and shipping — action by assignee of steamship company to recover balance due for charter hire — plaintiff's assignor chartered steamship to third person for about six months — agreement between defendant and plaintiff's assignor held to obligate defendant to pay charter hire — original charter party was canceled and defendant agreed to operate under same terms and chartered vessel to plaintiff, freight payable in advance — plaintiff refused to pay freight and defendant procured judgment in admiralty — defendant canceled second agreement while ship was at sea, plaintiff's ass'gnor took charge, and after discharging cargo at Amsterdam brought ship home — demurrage was collected by plaintiff from consignee and plaintiff was required to recoal for home voyage — allowance to plaintiff for coal properly made — original agreement by defendant is unambiguous and not ultra vires — not error to exclude evidence on question of reformation where demand therefor not pleaded — action not premature — defense of former action pending not available where action is discontinued and costs paid by plaintiff — appeal from order denying defendant's motion to dismiss complaint because former action was pending is academic and should be dismissed — order denying defendant's motion to correct clerk's minutes properly granted.

In an action to recover the balance due for the charter hire of a steamship it appeared that the plaintiff's assignor chartered the steamship to a third person for about six months at an agreed rate per month payable in advance; that in consideration of assigning the hire to the defendant the latter agreed to pay the charter hire; that the defendant contends that said agreement was merely to advance to the plaintiff's assignor by way of loan the amount of the charter hire and was not a primary obligation to pay the amount thereof; that about two months after the original charter party was executed it was canceled by an agreement between the plaintiff's assignor and the defendant under the terms of which the defendant was to operate the ship for whom it may concern at the same rate per month less commissions and was to return the ship to New York at the end of the period; that the defendant chartered the ship to the plaintiff, which company is owned by the same persons who owned the plaintiff's assignor, for a trip from Cuba to Holland under an agreement to pay the freight in advance; that after the cargo was loaded the plaintiff refused to pay the freight in advance and the defendant brought an action in admiralty to recover the same in which action the court, after refusing to allow counterclaims interposed by the plaintiff, rendered a judgment in favor of the defendant;

that after the steamship had left port bound for Amsterdam the defendant canceled the agreement and refused longer to be responsible for the management of the ship; that the plaintiff's assignor sent its agent to Holland who took charge of the ship, discharged its cargo after some delay caused by a strike, collected demurrage from the consignee and after recoaling the vessel brought it home. ·

*Held,* that the original agreement between the defendant and the plaintiff's assignor was a direct obligation of the defendant to pay the charter hire of the steamship and it was not ambiguous in its terms and, therefore, the court was right in excluding evidence of extrinsic facts to show that it was the intention of the parties that the advances were made as a loan; and that said contract was not *ultra vires* on the part of the defendant since it appears that the defendant was engaged in the business of chartering steamships and was carrying on a very extensive shipping business.

The court properly allowed to plaintiff the expense of the coal purchased in Holland for the purpose of bringing the steamship to New York since the agreement contemplated that the defendant would return the steamship to New York at the expiration of the period of the charter and the defendant cannot raise the question of the sufficiency of the proof of the amount paid for the coal for the first time on appeal, but it should have presented the point to the court below by request or exception and not having done so it virtually agreed with the court's finding that the amount was paid for coal.

It was not error for the court to exclude evidence on the question of reformation of the agreement since the defendant did not make any claim in its pleadings that the agreement should be reformed and did not pray for judgment reforming the contract and furthermore the evidence does not justify a conclusion that the agreement was intended to be a loan of money by the defendant to the plaintiff's assignor.

The defense that the action was premature because it was commenced in violation of the terms of the second agreement under which the defendant undertook to operate the steamship for the benefit of whom it may concern and that an accounting must first be had, falls since the evidence shows that the defendant, while the steamship was on the high seas, repudiated the agreement and refused to be responsible further for the management of the vessel.

The defense of a former action pending is not available since that action has been discontinued and the costs paid, and the appeal from an order denying a motion to dismiss the complaint because a former action was pending is academic and is dismissed.   The court properly denied defendant's motion to correct the clerk's minutes which were in substantial accord with the stenographer's minutes.

APPEAL by the defendant, A. O. Andersen & Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Nassau on the 22d day of June, 1922, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 1st day of July, 1922, denying the defendant's motion for a new trial made upon the minutes.

*Herman S. Hertwig* [*John A. McManus* and *Dudley C. Smith* with him on the brief], for the appellant.

*Alvin C. Cass,* for the respondent.

Kelly, P. J.:

There are three appeals in this action before the court for decision: *First,* the appeal from the judgment entered upon the verdict; *second,* an appeal from an order made at Special Term May 1, 1922 (as amended), denying defendant's motion to dismiss the complaint because of the pendency of a prior action between the parties in New York county, involving the same issues (*Susquehanna Steamship Co., Inc., v. Andersen & Co., Inc., Action No. 4 — Appeal No. 2,* 208 App. Div. 786); *third,* an appeal from an order made by the trial justice June 12, 1922 (as amended), denying defendant's motion to correct the clerk's minutes of the trial of the action by striking out the recital of motions made by defendant's counsel and inserting instead what defendant claims were the actual motions as shown by the stenographer's minutes. (*Susquehanna Steamship Co., Inc., v. Andersen & Co., Inc., Action No. 4 — Appeal No. 3,* 208 App. Div. 787.) There is also before us for decision a motion made by the plaintiff, respondent, to dismiss the second appeal above referred to upon the ground that it is academic in that the action in New York county referred to has been discontinued pending argument of these various appeals upon plaintiff's paying all costs, disbursements, allowances and damages under an injunction bond aggregating $6,000. Plaintiff also asserts as ground for dismissing the appeal that the pendency of the action in New York county was pleaded as a defense in the main action, was passed upon by the court on the trial, and is before the court on the main appeal. Defendant obtained no stay but went to trial upon the merits without objection, and plaintiff alleges that the preliminary motion and order thus became academic.

The plaintiff Susquehanna Company sues as the assignee of the Lydia Company to recover $167,446.10, balance of $464,346.10 which it is alleged defendant owed the Lydia Company under a written agreement dated September 12, 1919. The Lydia Company had chartered the steamship *Lydia* to one Crotois for a period of about six months at $59,380 per month, payable in advance. It is alleged that in consideration of the Lydia Company making the charter to Crotois and assigning the hire to the Andersen Company, the latter company agreed to pay the charter hire. Plaintiff alleges that the total hire due was $464,346.10, that there was paid on account $296,900, leaving the balance due $167,446.10.

The plaintiff claimed that the agreement of September 12, 1919, was a direct obligation of the defendant Andersen Company to pay the charter hire. On the other hand the defendant asserted that it was " an agreement merely to advance to the Lydia Steamship Company, Inc., by way of loan, the amount of the Crotois

charter hire, and to collect the said hire from Crotois under the said assignment by way of reimbursement, if possible, with, however, the right of recourse to the Lydia Steamship Company, Inc., for any amount so advanced in the event of Crotois' default."

The learned trial justice held that defendant's letter to the Lydia Company of September 12, 1919, bound defendant to pay the charter hire of $59,000 per month.

Defendant's contention is based principally on the last paragraph in the letter reading:   " It is understood that in case the amount advanced by us should exceed money due by charterers, you will refund same."   Defendant says that reference to the charter shows that Crotois was obligated to pay every month the fixed and definite sum of $59,380, and this fixed and definite sum was the precise sum which Andersen in his letter of September twelfth agreed to pay; that the amounts the defendant agreed to pay were thus identical with the amounts to become due from Crotois to the steamship company and they become due from Crotois to the steamship company at the precise time when the defendant agreed to pay them under the letter of September twelfth.   Defendant argues that there could be no difference, and that under the construction of the agreement by the court below, that sentence becomes superfluous.

The defendant, appellant, urges this last clause in the letter as a basis for the claim, *first*, that the agreement was for an advance or loan of money, and *second*, he insisted at the trial and claims here that it rendered the agreement ambiguous and authorized the introduction of extrinsic evidence to show what the real meaning of the parties was.   The trial justice held that the agreement was unambiguous and he excluded evidence of extrinsic facts.

The plaintiff, respondent, contends that the agreement is not ambiguous; that the Crotois charter provided for payment of the hire in advance; that the hire was to continue until actual redelivery of the vessel to the owners in New York.   If the vessel was on her return voyage when the payment for hire fell due, payment was to be made for the estimated time necessary to reach port " and when the steamer is delivered to owners' agents any difference shall be refunded by Steamer or paid by Charterers, as the case may require."   And plaintiff refers to the fact that the charter was made for " *about* six months," and says that the provision for readjustment on redelivery was necessary, and that it is this readjustment which is referred to in the last paragraph of the letter of September 12, 1919, and that the inseparability of charter and guaranty is emphasized by these co-ordinate clauses.   He says that the letter was the strongest

form of guaranty, that this was not merely an agreement that the debtor would pay (which would of itself be a primary obligation [*Vetter* v. *Welz & Zerweck*, 143 App. Div. 121]), but this letter or agreement goes much further. The defendant contracted to pay the hire direct to the Lydia Steamship Company and received an assignment of the charter hire, and in paragraph 4 of the charter to Crotois which specifies the amount payable there is inserted: " Hire payable to A. O. Andersen & Co., Inc., New York." Respondent says that the charter and the defendant's agreement interlock and that together they create one instrument. The defendant's letter of September twelfth was answered by the Lydia Company on the same day agreeing to the assignment of the hire. Respondent argues that the defendant, appellant, has no right to emasculate the letter by referring to this last clause and at considerable length argues that defendant's contentions that the clause renders the contract ambiguous, or that it furnishes any basis for defendant's claim that the agreement was for a *loan*, are unreasonable and specious.

The learned trial justice agreed with the plaintiff, and I think he was right in his construction of the agreement and that the defendant was liable for the charter hire of the steamer.

The proper decision of this question largely determines the case.

This involves the serious result that defendant was liable for the entire charter hire, $464,346.10. There is no dispute about the aggregate amount of the charter hire. But of this large indebtedness, defendant was immediately relieved of $296,900 because · Crotois had obtained another guaranty covering the first two months of the charter from Dexter & Co. This left a balance of $167,446.10, plus interest, for which sum the trial justice directed a verdict for plaintiff.

But there are additional complications. The defendant sets up as a defense and as a counterclaim a decree obtained by said defendant against the plaintiff in the United States District Court, Eastern District of Virginia, on November 14, 1921, for $147,867.45, based upon the following facts: On November 28, 1919, the Lydia Steamship Company made an agreement with the defendant evidenced by a letter of that date. I may state here, what is conceded throughout, that the Lydia Steamship Company and the Susquehanna Steamship Company were both corporations organized and controlled by the Auditore Brothers, two longshoremen who amassed considerable wealth by their control of the laborers on the water front during the war. They had finally purchased several steamships from the United States Shipping Board, and

for convenience in financing and handling the vessels, several corporations were formed, all of them controlled by the Auditore Brothers, and each corporation bearing the name of the particular steamship involved in the transaction. Thus the Lydia Steamship Company owned the steamship *Lydia*, the Susquehanna Steamship Company owned the steamship *Susquehanna*, and so on. The defendant A. O. Andersen & Company, Inc., which was, as appears by its letterhead in evidence, " Shipowners and Brokers," with offices in various parts of the world, had loaned the Auditores some $750,000 to enable them to make these purchases.

On November 28, 1919, the Lydia Steamship Company wrote a letter to the defendant referring to the Crotois charter and to Andersen's guaranty or agreement of September 12, 1919, which we have been discussing, and to the fact that Crotois had failed to give any guaranty except as to the first two months. The Lydia Company (the Auditore Brothers) say to Andersen that as a dispute exists as to Andersen's obligation under the letter of September twelfth, they propose in the interest of all concerned and for the purpose of minimizing loss, and without affecting the claims of either party as against the other, that the Crotois charter be considered canceled and that the steamship *Lydia* be delivered to Andersen & Company for the remainder of the period covered by the Crotois charter, " about six months from September 27, 1919," Andersen & Company " to have the right to handle the vessel and trade her for the benefit of whom it may concern " and work the matter out to the best advantage. The terms of the charter party to Crotois were to control as between the Lydia Company and Andersen. The latter company was to keep an account of all earnings and expenses of the vessel and at the expiration of the period to account for all moneys received and expended. Andersen & Company was to receive the same commission as if the original charter to Crotois had been carried out, and was to pay $59,380 per month, less two and one-half per cent commissions in advance in accordance with the letter of September 12, 1919. The letter goes on to say:

" When the period above mentioned has run off we will have a conference with you and endeavor to work out an amicable settlement of the questions involved between yourselves and ourselves. Should we not be able to reach an amicable agreement, the questions involved are to be determined either by arbitration in the usual way, or by a court action if necessary. We will cooperate with you in every way in trading the vessel to the best advantage and will give all necessary orders to the master, and will sign all necessary notices in connection with the cancellation

of the charter party, or any other notices necessary to protect our rights and yours.

"We are entering into this agreement with you for the purpose of avoiding a dispute with you at this time and with the idea that the vessel may be traded to the best possible advantage during the term above mentioned and without prejudice to your rights or ours, as they now exist.

"Yours truly,

"LYDIA STEAMSHIP CO., INC.,

"By Joseph Auditore,

"Sec. & Treas.

"The terms and conditions of the foregoing letter are hereby approved and accepted.

"A. O. ANDERSEN & Co., INC.,

"by V. Reimann,

"Vice Pres."

On December 29, 1919, Andersen, operating the *Lydia* under the above agreement, chartered the vessel to the plaintiff the Susquehanna Steamship Company, Inc., for the carriage of a cargo of sugar from Cuba to Holland, and plaintiff agreed to pay defendant freight in advance at the rate of $30 per ton at New York ten days after receipt of master's cable advising that the vessel was loaded and that bills of lading had been signed. The vessel was delivered to plaintiff in Cuba, loaded with 4,928 tons of sugar and on or before February 16, 1920, the master's cable advice was sent to plaintiff. Thereupon there was due defendant from plaintiff in ten days, viz., February 26, 1920, $147,867.45 hire of said steamer. The Susquehanna Company did not pay the money on February 26, 1920.

It will be remembered that on February 28, 1920, there would be due from the Andersen Company to the Lydia Company a monthly hire of $59,380. So the plaintiff, on February 24, 1919, took an assignment from the Lydia Company of the $59,380 falling due February twenty-eighth. When Andersen demanded his $147,867.45 Auditore (or the Susquehanna Company) failed to pay it. Andersen offered to let them deduct the $59,380, but they still refused to pay. This left Andersen with the ship loaded and bound to make a voyage from Cuba to Holland, but without cash to cover the operation of the vessel.

Andersen brought a suit in admiralty in the United States District Court in Virginia to recover the $147,867.45. The Auditores answered alleging an offset or claim for damages against Andersen by reason of some dispute over the payments which Auditore

claimed were due under the letter of November twenty-eighth, but the admiralty court determined that these counterclaims could not be set up in the admiralty action and that they could only be enforced at common law or in equity, and Andersen obtained a decree for the $147,867.45.

At the trial in the case now before us for review, the defendant's (Andersen) counsel said that if the learned trial judge denied defendant's motions for nonsuit, he asked that the Virginia judgment be set up and allowed as and against the claim of the plaintiff, and the trial justice directed a verdict in favor of defendant for $147,867.45 to be set off against the verdict directed in plaintiff's favor for $167,446.10 and interest. This reduces the plaintiff's recovery to $19,578.65.

But this is not all. The steamship *Lydia* sailed from Cuba to Amsterdam loaded with a cargo of sugar under the agreement between Andersen and the Susquehanna Company, described as the " Sugar Charter Party." The Susquehanna Company had two " lay days " on arriving at Amsterdam and agreed to discharge the cargo at the rate of 500 tons per weather working day, Sundays and holidays excepted. For each day's detention over the time allowed to discharge the vessel due to the fault of the Susquehanna Company they were to pay fifty cents per ton, and if they delivered in a shorter period than allowed they were to be allowed twenty-five cents per ton. The cargo was to be discharged alongside of a dock. When the vessel reached Amsterdam there was a strike in progress among the longshoremen.

But while the steamship was on the high seas on the voyage to Amsterdam, the plaintiff and defendant clashed over the refusal of the Auditores to pay the amount due on the sugar charter, $147,867.45, and over Auditores assigning the rights of the Lydia Company to the Susquehanna Company, and on March 4, 1920, Andersen wrote a letter to the Lydia Company refusing to go on with the operating agreement of November 28, 1919, and stating: " You will, therefore, please take notice that we have cabled our agents in Amsterdam canceling our instructions to them to take care of the vessel, and we will not have anything further to do with the management of this vessel."

This left the Lydia Company, owner of the steamship, in a serious position. The Lydia Company had given Andersen the right to operate it for account " of whom it may concern " with a view to reducing the loss. And in this letter Andersen notifies them that he washes his hands of responsibility for the vessel. The ship was on the way across the ocean. Auditore left New York at once for

3

Amsterdam and arrived there, finding the ship anchored out in the harbor on account of the strike. She was not allowed to come to the wharf. Auditore details his transactions in Amsterdam and his efforts to get the ship unloaded. The ship, which had arrived in Amsterdam about April 8, 1920, was delayed until April twenty-eighth. Auditore says he did his best to discharge the cargo, and he relates his conferences in Amsterdam, where he apparently spent considerable money. He then started back to the United States with the *Lydia*, but instead of coming direct to New York, he stopped at Nova Scotia and he takes the arrival of the ship at Nova Scotia, which was nearer Amsterdam than New York, as the date of its return to him for the purpose of measuring Andersen's liability to him under the original agreement. He claims that Andersen abandoned the ship and that he, Auditore, was acting for Andersen up to the time the ship arrived at Nova Scotia on May 21, 1920. The trial justice in directing a verdict for plaintiff under the agreement of September 12, 1919, and as assignee of the Lydia Company, for $167,446.10 took this date, May twenty-first, as the limit of defendant's possession of the steamship.

An interesting history of the strike and the situation in Amsterdam when the steamship arrived in April, 1920, is found in the evidence of witnesses examined at that place on commission. It appears that the Susquehanna Company claimed demurrage from the consignee of the sugar in Amsterdam for the delay caused by the strike. The consignees had agreed to pay demurrage and had not been wise enough to except themselves from liability in case of " strikes." The claim was for some $120,000 on two steamships delayed. With one of them, the *Redondo*, we have nothing to do. Suit was brought to recover the demurrage claimed, and it was finally settled so that the Susquehanna Company or the Lydia Company collected $26,778.67 demurrage for delay of the *Lydia*. The defendant Andersen Company by a supplemental answer pleaded this payment of money to the Auditores as an offset to any claim they might assert against the defendant, and the trial justice said: " They [defendant] certainly are entitled to an offset for any time during the charter period that you have collected for." If the total amount of demurrage collected as above stated was $26,778.67, it will be seen that it would wipe out the reduced balance found due plaintiff of $19,578.65.

And the appellant's claim that it should be so applied in full and that even conceding the propriety of the finding that the agreement of September twelfth was absolutely binding on defendants, they, defendants, would be entitled to a judgment against plaintiff. They set out a statement in their points:

" Amount conceded due to defendant on the theory
    of the court below, being the amount of the Vir-
    ginia judgment.............................. $147,867 45
" Amount adjudged to be due plain-
    tiff...........................  $167,446 10
" Less demurrage collected in Amster-
    dam...........................   26,778 67
                                     ───────────   140,667 43
                                                  ────────────

    " Balance.............................. $7,200 02 "

But Auditore claimed that as against the demurrage so collected,
he should be credited with his expenditures at Amsterdam for
strike-breakers, stevedores, etc., including coal and water ballast
necessary to bring the vessel back to America.

The learned trial justice decided that he would allow the plaintiff
" a claim for coal $18,200," and " that will reduce the plaintiff's
claim, if my figures are correct to $158,867, not considering
interest," and counsel consenting to calculate interest, he said:
" the Court directs you after allowing both plaintiff's claim and
defendant's claim, to render a verdict in favor of the plaintiff
in the sum of $9,000." This was an inadvertence, and the judge
said: " The court directs a verdict for $11,000 subject to correction
as to interest only, counsel agreeing on the other figures."

In other words, the learned trial justice had stated that he
intended to grant plaintiff's motion for direction of a verdict for
$167,446.10 which was the balance due on the original Crotois
charter afterwards assumed by defendant as the court construed
the letter of September 12, 1919; from this amount the court
deducted the sum received by Auditore as demurrage of $26,778.67,
less $18,200 which he finds was spent for coal, leaving the net
deduction $8,578.67. If we subtract $8,578.67 from $167,446.10 we
have left $158,867.43.

Then taking this amount........................ $158,867 43
and deducting the amount of defendant's recovery..   147,867 45
                                                    ────────────
there remains................................. $10,999.98

By this method the amount of the final verdict was reached.

The only question remaining is the propriety of the allowance
of the item $18,200 for coal, which sum the trial court deducted
from the demurrage collected by Auditore. If Auditore was entitled
to anything, it must be upon the theory that the Andersen Com-

pany broke the agreement with the Lydia Company to operate the vessel for account " of whom it may concern." The trial justice evidently decided as matter of law that they did break the agreement. I am inclined to think he was right in his decision. Putting aside the liability of the Susquehanna Company on the sugar charter (which has been established and was allowed), Andersen was in possession of the steamer under the original agreement with the Lydia Company. Under that agreement Andersen took possession of the vessel " for the remainder of the period covered by the charter to Crotois, that is, for a period of about six months from September 27, 1919," and " The terms of the charter party, except as modified by this letter, are to control as between us, although canceled as to Crotois." Under the charter to Crotois the charterer, Crotois, agreed that hire should " continue until her delivery in like good order and condition to the Owners (unless lost) at New York." The obligation of the charterer was to redeliver the vessel to the owner at New York. If as charterer he engaged in a voyage to Amsterdam, and saw fit for reasons good or bad to abandon the charter while the vessel was on the high seas on the way to Holland, there was obligation on the owner on receiving notice of such abandonment to at once take steps to protect the vessel, and this is what Auditore did in going to Amsterdam. Whether Andersen was right or wrong in his contention that the Susquehanna Company should have promptly paid the sugar charter money on February 6, 1920, such refusal did not justify Andersen, as between him and the Lydia Company, in abandoning the operation of the vessel which was *en route* to Amsterdam under a contract made by Andersen.

And I do not find that the learned counsel for defendant asked to go to the jury on any question of fact regarding the propriety of Auditore's trip to Amsterdam to protect the ship; and when we come to the allowance of $18,200 for coal purchased in Amsterdam with which to navigate the vessel back to America, counsel for defendant did not ask to go to the jury on *that* question. Counsel for defendant asked leave to go to the jury " on the following question;" then he specifies two questions: *First*, the " meaning " of the agreement of September twelfth; *second*, whether in the assignment of the charter hire in that agreement there was an undertaking by the Lydia Company that the hire was collectible from Crotois. The learned trial justice having properly denied both requests, the defendant's counsel said: " Your Honor is allowing plaintiff to put in expenses of operating the ship. Of course, *we* had expenses." It will be noted that the " expenses of operating the ship " referred to the $18,200 for coal allowed

by the trial justice, and defendant made no objection to the amount of the allowance nor did he ask to go to the jury on the question of how much was actually expended for coal.

Nevertheless the appellant on this appeal argues that the court erred in allowing $18,200 for coal. He says: " This item was not proved. The attempt to prove it by Frank Auditore failed. No vouchers for any such disbursement were produced, and Auditore himself testified that he did not know how much coal went on the vessel, he did not see any bill for the coal; all that he knew was that he handed $18,200 to an agent to pay for coal, but whether the agent actually used it to pay for coal or whether the vessel received that amount of coal was not covered by any proof whatever."

It is evident that Auditore was obliged to spend money freely at Amsterdam to get the cargo discharged and to recover the steamship. He said he spent $25,000 " more or less." The trial justice only allowed the expenditure for coal. As to that item, he was asked: " Q. Did you pay out $18,200 for coal? A. Yes." He claimed that he had the receipted bills at his office. He testified that he paid for water ballast, which of course was as necessary as coal, if the vessel was to be navigated back to America, also for pilotage. There is no motion in the record to strike out the coal bill altogether, for failure of proof, or to leave any question as to the amount paid to the jury. The plaintiff, respondent, contends that the defendant should have presented this concrete objection at the trial and that the trial court would undoubtedly have given plaintiff time to produce the receipts. He says there was no real dispute at the trial as to the amount paid for coal. I think defendant should have presented the point as to the $18,200 coal bill by request or exception, and that he virtually agreed with the judge's finding that $18,200 was paid for coal.

Summarizing my conclusions on this lengthy and somewhat complicated record, and incidentally referring to the other appeals from orders, and the motion to dismiss one of said appeals, I think the agreement between the Lydia Steamship Company and the defendant, evidenced by the letter of September 12, 1919, constituted a direct, unambiguous obligation of the defendant to pay the hire of the steamship. Therefore the learned trial justice did not err in excluding evidence of surrounding circumstances as aids to interpretation. The claim that the contract evidenced by the letter was *ultra vires* is untenable because the evidence shows the defendant corporation engaged in the very business of chartering steamships as shipowners and brokers with offices in New York city, San Francisco, Portland, Ore., Seattle, Christiania,

Copenhagen and Elsinore, and apparently carrying on a very extensive shipping business. Defendant had assisted in financing the purchase by the Auditore Brothers of the steamship *Lydia* and other vessels from the United States Shipping Board, and the subject-matter of the contract directly involved in this litigation seems to be a detail of defendant's extensive transactions in shipping. Mr. Reimann, defendant's vice-president and general manager, was in control of defendant's operations, and indeed I do not understand that defendant makes any point of lack of authority on his part to represent defendant. The last clause in the contract evidently refers to the adjustment of the amount due for hire on the return of the steamship, the exact date of which return was necessarily indefinite and the promise of the Lydia Company to refund any excess of charter hire paid referred to the fact that defendant might have paid the full charter hire for a month, whereas the steamship returned before the month expired. The defendant's contention that the court erred in excluding evidence upon the question of reformation of the contract pleaded as a defense is also untenable. It is true that there is only one form of civil action, that the distinction between actions at law and suits in equity and the forms of those actions and suits have been abolished (Civ. Prac. Act, § 8), and that a defendant may set forth in the answer defenses and counterclaims whether legal or equitable. (Id. § 262.) In the case at bar the defendant did not plead a counterclaim for reformation and the action was called for trial as an action at law before the court and a jury without any application for amendment of the answer so as to set up a counterclaim or for a separate trial of the equitable issue so raised. The defendant's answer contained no prayer for judgment reforming the contract. The action was tried as an action at law and was based upon a written instrument concededly executed by the defendant. There was no claim of fraud, and evidence that the written contract did not express the agreement between the parties was inadmissible as a defense. (*Ward* v. *Union Trust Co.*, 166 App. Div. 762.) The suggestion that this apparently plain, unambiguous agreement between the parties was in reality an agreement by defendants to loan money to the plaintiff's assignor is negatived by all the evidence and the subsequent dealings of the parties.

The defense that the action was premature because it was commenced in violation of the terms of the subsequent agreement between the parties of November 28, 1919, under which defendant undertook to operate the steamship " for the benefit of whom it may concern," and that an accounting must first be had, falls because the evidence shows that defendant on March 4, 1920,

when the steamship was on the high seas on a voyage to Amsterdam undertaken by defendants, wrote a letter to the Lydia Company expressly renouncing this agreement, stating that it was no longer possible for defendant to go forward with said agreement and that " we will not have anything further to do with the management of this vessel." I think this was a breach of the agreement in question by defendant, and that the Lydia Company was justified in recovering the vessel and beginning an action, and that company has duly assigned its rights to the plaintiff. The defense of the former action pending in New York county was considered by the trial justice. It appeared that the equity action referred to, commenced in New York county by the plaintiff against the defendant, had been discontinued by order upon payment of costs by the plaintiff here. Prior to the trial of the case at bar the defendant made a motion at Special Term to dismiss the complaint in this action because of the pendency of the action in New York county. That motion came on for hearing on May 1, 1922, and was denied and an order entered accordingly. No application was made to stay the trial of the case at bar pending appeal from that order. It appears that when the plaintiff commenced the present action in Nassau county in 1921 the defendant then made a motion to dismiss because of the pendency of the New York county action. The plaintiff thereupon entered an order in the New York county action *ex parte* discontinuing that action upon payment of costs and disbursements. Defendant moved to vacate this *ex parte* order of discontinuance and the Special Term in that county, in December, 1921, vacated the order to the extent of allowing the New York action to proceed for the purpose of adjudicating defendant's right to recover upon a bond given by plaintiff upon obtaining a temporary injunction in that action but without prejudice to plaintiff's right to proceed in Nassau county. Defendant's motion to dismiss the action at bar was thereupon denied by Mr. Justice DIKE at Special Term on January 6, 1922. No appeal was taken from this order of Mr. Justice DIKE. The defendant appealed from the order made in the New York county action, and this court in the First Department ordered that the New York county action " be discontinued upon payment of the damages, if any, suffered by the defendant by reason of the granting of the temporary injunction herein, together with taxable costs." (*Susquehanna Steamship Co., Inc.,* v. *Andersen & Co., Inc.,* 200 App. Div. 902.) On the trial of the case at bar in May, 1922, the learned trial justice held that the New York county action had actually terminated save as to payment of the costs and damages. Prior to the argument of the appeal in the case at bar the plaintiff

had paid to the defendant the costs and damages in the New York county action amounting to $6,000, and defendant accepted said sum in full payment of costs, disbursements, allowances and damages under the temporary injunction.

The defendant has taken a separate appeal from the order of May 1, 1922, denying the motion to dismiss the case at bar; the plaintiff has moved to dismiss the appeal upon the ground that the matters involved are academic. I see no reason for interfering with the conclusion of the learned trial justice at the trial that in view of the denial of the previous motion to dismiss the complaint upon the ground of pendency of the action in New York county, contained in Mr. Justice DIKE's order from which no appeal was taken, and because of the orders of the court in New York county at Special Term, and this court in the First Department discontinuing the former action, the action was not pending and no defense. I also agree with the plaintiff that in view of the acceptance by defendant prior to the argument of this appeal of $6,000 in full settlement of the costs, allowances and damages in that action, the appeal is academic and should be dismissed. With reference to the appeal from the order denying defendant's motion to correct the clerk's minutes of the trial, I think the clerk's minutes are in substantial accord with the stenographer's minutes. Apparently this motion is made for the purpose of affecting in some way the determination of the Federal court in Virginia. I think we should not attempt to interfere with the determination of that court as to the effect of the judgment here, if any, upon the decree of that court.

On the appeal from the judgment entered upon the verdict directed at the trial the judgment and order denying the motion for a new trial should be affirmed, with costs.

Present — KELLY, P. J., JAYCOX, MANNING, YOUNG and KAPPER, JJ.

Judgment and order unanimously affirmed, with costs.